UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
SOUTHERN DIVISION
LONDON

| | | |
|---|---|---|
| CAMACHO BALTAZAR, | ) | |
| | ) | |
| Petitioner, | ) | Action No. 6:19-cv-105-GFVT |
| | ) | |
| v. | ) | |
| | ) | |
| WARDEN BARNHART, | ) | **OPINION & ORDER** |
| | ) | |
| Respondent. | ) | |
| | ) | |

\*\*\*   \*\*\*   \*\*\*   \*\*\*

Federal inmate Camacho Baltazar filed his habeas corpus petition under 28 U.S.C. § 2241, contending that his prison disciplinary conviction for possessing narcotics is invalid because the field kit that was used to test for them yielded unreliable evidence. [R. 1] The warden responds that the field test kit was reliable and Baltazar's conviction was supported by "some evidence" as required to satisfy due process concerns. [R. 8] Baltazar has filed his reply [R. 9], and this matter is ripe for decision.

In March 2018, a prison guard searched Baltazar and found ten pieces of thick lined paper in his front pocket. Ten minutes later a lieutenant tested the paper using a Narcotic Identification Kit ("NIK"). The first test, NIK Test A, was positive for amphetamines. A second, confirmatory test, NIK Test U, was also positive for amphetamines. On the basis of these tests prison officials issued an Incident Report charging Baltazar with Possession of Narcotics or Drugs, a Prohibited Act Code 113 offense. [R. 1-2 at 1]

A Disciplinary Hearing Officer ("DHO") held a hearing on the charges one week later. During the hearing Baltazar did not raise any procedural objections to the disciplinary process. Instead, he stated that he purchased the paper from the prison's commissary and that it was just

1

regular paper. The DHO nonetheless found Baltazar guilty of drug possession, finding the officer's report and the results of two drug tests more reliable evidence than his unadorned denial. The DHO imposed various sanctions which included the disallowance of 41 days of good conduct time. [R. 1-2 at 2-5] Baltazar appealed the DHO's finding, contending that the investigation was inadequate; the NIK test is unreliable; the officer who conducted it lacked necessary training; and the paper should have been tested at an outside laboratory. The Bureau of Prisons denied the appeal at both the regional and national level, responding that the officer who conducted the test was properly trained and certified to do so; that the NIK tests are reliable; and that outside testing was not necessary. [R. 1-2 at 6-11]

In his petition, Baltazar repeats his contention that the NIK tests are unreliable and cannot satisfy the "some evidence" standard required by the Due Process Clause. He argues, without evidentiary support, that NIK test kits frequently yield "false positive" test results, and therefore that "[w]ithout requiring conclusive laboratory testing, the BOP is violating the Constitution." [R. 1-1 at 3-6]

It is well established that before prison officials may disallow or order forfeit an inmate's good time credits, procedural due process requires that the prisoner receive (1) advance notice of the charges; (2) an opportunity to call witnesses and present evidence; and (3) a written decision explaining the grounds used to determine guilt or innocence of the offense. *Wolff v. McDonnell*, 418 U.S. 539, 563-67 (1974). Baltazar does not suggest that these requirements were not met.

Instead, he contends that the reasons used to justify the loss of good time credits were not supported by some evidence in the record as required by *Superintendent v. Hill*, 472 U.S. 445 (1985). In *Hill*, the Supreme Court explained that under the "some evidence" standard, "the relevant question is whether there is any evidence in the record that could support the conclusion

2

reached by the disciplinary board."). *Id*. at 454-55. The *Hill* standard is a lenient one, requiring only "a modicum of evidence" to support the outcome, and is met if the record contains *any* evidence that could support the DHO's decision. *Hill*, 472 U.S. at 455-56. Because the "[r]evocation of good time credits is not comparable to a criminal conviction," there is no *per se* requirement that an investigator divulge or the DHO obtain and consider all exculpatory evidence. Instead, the DHO's decision must merely "have some basis in fact." *Id.* at 456.

The DHO's decision was supported by ample evidence. The papers found on Baltazar's person were subjected to two different drug tests and both tests came back positive for amphetamine. Because there is evidence in the record to support the DHO's decision, it satisfies the requirements of due process. *Hill*, 472 U.S. at 455-56.

Baltazar alleges, without evidentiary support, that the NIK tests used are not reliable. But as the petitioner seeking habeas relief in this proceeding, it is his burden to come forward with evidence establishing that the NIK tests used in his particular case are so unreliable that they provided essentially no evidence at all that amphetamines were present in the paper that was tested. Instead he offers only argument. Indeed he does not offer any information about the particular test kit used, its manufacturer or model number, or the reagents involved.[1] Without a particularized argument supported by evidence rather than mere supposition, Baltazar has failed to carry his burden. Accord *Higgs v. Bland*, 888 F.2d 443, 449 (6th Cir. 1989) ("Of course, a test which produced frequent incorrect results could fail to constitute 'some evidence' under the *Hill*

---

[1] To demonstrate the point, Baltazar quotes from an incompletely-identified document from 2004 which indicates that the "NIK NarcoPouch/Duqenois-Levine Reagent field test kit" may sometimes yield inaccurate results. [R. 1-1 at 4-5] That is, of course, true of any scientific test. But more fundamentally, Baltazar offers no evidence either that the test kit he refers to was actually used in his case, or that the statement he quotes remains valid 15 years after it was made. Notably, the sample pouch used in Baltazar's case states that it uses the "Marquis Reagent," [R. 8-2 at 21], a different reagent than the ones he disparages in his argument.

standard. However, no evidence was produced in this case to indicate that the probability of false results was more than a mathematical possibility. ... we have little difficulty in concluding that the presence of a positive EMIT test constitutes 'some evidence' from which the adjustment board could conclude that a tested inmate was guilty of the offense of drug use.").

Apart from evidentiary shortcomings, this type of argument has consistently been rejected by the courts. See *Arce v. Sepanek*, No. 7: 15-CV-09-ART (E.D. Ky. July 6, 2015) ("The DHO's evidence—the reports of two officers and a positive drug test—meets the low 'some evidence' burden."). As noted above, *Hill* does not require prison officials to obtain the best or even good evidence; it merely requires them to have some evidence sufficient to rationally support their conclusion. *Hill*, 472 U.S. at 455-56. The NIK test, while perhaps not as perfect as a test conducted in a laboratory setting, is considered generally reliable. *Peer v. Denham*, No. 15-cv-54-GPG, 2015 WL 5579654, at *6 (D. Colo. Sept. 23, 2015) (citing *Terry v. Dept. of Public Safety & Corr. Servs.*, No. 11-CV-1686, 2012 WL 2564779, at *8 (D. Md. June 29, 2012)). Even if it were considered merely adequate with the risk of a false positive, that is sufficient to satisfy due process concerns. Cf. *Easter v. Saffle*, 51 F. App'x 286, 289 (10th Cir. 2002) (holding that a "*single* urinalysis amounts to 'some evidence' and thus satisfies due process" even if the risk of a false positive exists). And the Constitution does not require that the results of a test conducted at the prison be confirmed by an outside laboratory. *Henson v. Bureau of Prisons*, 213 F.3d 897, 898-99 (5th Cir. 2000); *Allen v. Purkett*, 5 F.3d 1151, 1153 (8th Cir. 1993); *Koenig v. Vannelli*, 971 F.2d 422, 423 (9th Cir. 1992); see also *Cato v. Ives*, No. 12-CV-193-GFVT, 2013 WL 1856101, at *5 (E.D. Ky. Apr. 30, 2013) ("A prisoner also has no protected due process right in obtaining outside scientific or laboratory testing of evidence to be

used against him."); *Manfredi v. United States*, No. 12-1905 (RMB), 2012 WL 5880343, at *6 (D.N.J. Nov. 20, 2012) (same).

Because the two drug tests used by the BOP provided more than sufficient factual basis for them to conclude that Baltazar was found in possession of narcotics, the disciplinary sanctions were warranted and his petition must be denied.

Accordingly, the Court **ORDERS** as follows:

1. The Court **DENIES** Camacho Baltazar's petition for a writ of habeas corpus [R. 1].

2. This action is **DISMISSED** and **STRICKEN** from the Court's docket.

This 17th day of October, 2019.

Gregory F. Van Tatenhove
United States District Judge